Hand, J. (Dissenting.)
It will not be denied that a common carrier is bound to receive and carry, for a suitable hire, all the goods offered to him for transportaion. (Story on Bail., § 508; Jackson v. Rogers, 2 Show., 327; Cranch v. London and N. W. R. Co., 14 C. B., 255; 2 Kent 599.) This was the rule at common law, though he was excused if his carriage were full; and he was obliged to take only such as he carried in his known and usual course of business. (Sewall v. Allen, 6 Wend., 335; Johnson v. Midland, R. Co., 4 Exch. R., 367; Story on Bailment, § 508; Parsons on Cont., 649.) Nor was he compelled to receive the goods until he was ready to set forth on the route. Common carriers were liable for all losses except those occasioned by the act of God and public enemies; but as to the time of delivery by them, it has been said, they *253 are only responsible for the exertion of clue diligence. (Parsons v. Hardy, 14 Wend., 217; and see Hadley v. Clarke, 8 T. R., 259; Bowman v. Teall, 23 Wend., 306; Story on Bailment, § 545 a (4 Ed.) Hand v. Bayels 4 Whart., 204.) A carrier may also be a wharfinger, or warehouseman, or forwarding merchant; and if the property be received by bim in the first instance, as such, and not as carrier, his liability is measured accordingly, until he assumes the duty of carrier. But upon the delivery of the goods to one i as carrier, and acceptance thereof by him, his responsibility in that character begins; and one duty is to transport the property, at least with all reasonable diligence. And I: have found no case where a common carrier has been ' excused for detention, or a prolonged period of passage, beyond what could otherwise have been a reasonable time, when the delay was occasioned by the insufficiency of his means of transportation, after he has actually received the j goods for that purpose. And, certainly, this cannot be a legal excuse, when he has not only actually so received the goods, but conveyed them, as in this case, over a portion of the route. No one will contend that a railroad company would be justified in leaving a passenger midway on his journey because they had not sufficient cars; and the same principle applies to freight, though the absurdity of the proposition, is not so striking. As we have seen, the carrier at common law, could refuse if his carriage were full; and if he could not immediately transport it, he might take a delivery of the property as depositary or bailee of a different character, until he could carry it. But if he received it as carrier absolutely, his duty, not only to preserve but to forward, immediately attached. If from any cause additional time will be required, he should receive it conditionally, or make a special contract; and in the former case, the circumstances must be such as to justify him in imposing terms. But I know of no principle by which he can receive and keep it on hand, and delay the transportation *254 beyond the usual, ordinary and necessary time, especially without notice of the expected delay and without consent of the bailor, express or implied. That, it seems to me, would be a violation of his contract and his duty to the public, and must necessarily produce great loss and inconvenience. Those interested in the delivery of the property at the place of its destination, have a right to make their calculations upon the ability and willingness of the carrier to transport the property in the requisite time; which, unless some day is fixed, or there is some other agreement, express or implied, or peculiar circumstances which control, should be as soon as it can be done with suitable means, and with all reasonable diligence. And if the mere delivery of the goods to the carrier, and his acceptance, impose such obligations, a detention along the route after the transit shall have commenced, certainly cannot be justified from any cause which could have been prevented by ordinary vigilance and prudence.
But some of the duties of railroads, in respect to transportation of persons and property, have been made the subject of legislative regulation. By the 36th section of the act to authorize the formation of railroads, and to regulate the same, (Laws of 1850, ch. 140, p. 231,) it is provided, that “ every such corporation shall start and run their cars for the transportation of passengers and property, at regular times, to be fixed by public notice; and shall furnish sufficient accommodations for the transportation of all such passengers and property, as shall, within a reasonable time previous thereto, be offered for transportation, at the place of starting and the junction of other railroads, and at usual stopping places established for receiving and discharging way passengers and freights for that train; and shall take, transport and discharge such passengers and property at and from and to such places,” on payment of freight &c.; and they are made liable to the party aggrieved for neglect or refusal. Here is a positive injunction that *255 every railroad shall furnish sufficient accommodations for transporting all property that shall, within a reasonable time before they are required to transport it, be offered for that purpose. In most respects, this section is but declaratory of the common law; and I do not say that a railroad is liable if it does not meet every emergency, however great and sudden, and be ready to carry all that may be offered for freight or passage, under all possible circumstances. These corporations are of great benefit to the country, and their existence is authorized and sanctioned by law; and there is no reason why the statute should not receive a rational and not a captious construction. But if the statute be not absolutely imperative without regard to circumstances, it does require these corporations to adapt their facilities to the general wants of the community. And there is nothing in the act that relaxes the obligation of a common earner to proceed with all diligent speed after having started on the passage. In Hadley v. Clarke, (8 T. R., 259,) a vogage was interrupted by an embargo; and even then, its continuation for two years, did not absolve the carrier from his obligation to perform as soon as he reasonably could after it was taken off. In Parsons v. Hardy supra, the carrier proved that the goods were transported with all possible diligence until they were stopped by tire act of Grod; and it seems clear, too, on principle, that want of accommodations or facilities cannot be a valid excuse for detention beyond the usual time after the property is once on its way.
These principles applied to this case, do not exonerate the defendants. The Buffalo and New-York city road and the defendants ran “in connection” from Buffalo to the city of New-York. There has been some question how far one railroad corporation can be sued for the negligence of another where the transportation is continuous and entire over their respective roads. (Weed v. Sar. and Sch. R. Co., 19 Wend., 534; St. John v. Van Santvoord, 25; id., 660; S. C., 6 Hill, *256 158; Muschamp v. Lancaster Railway, 8 M. & W., 421; Cronch v. Lond. & N. W. R. Co., 14 C. B., 255; Parsons on Cont., 686, 7, and notes; Champion v. Bostwick, 18 Wend., 175; S. C., 11 id., 571; Fromont v. Coupland, 2 Bing., 170; Russell v. Awstwick, 1 Sim. R., 52.) In some of the cases above cited, the corporation ‘to whom the property was first delivered, was held liable for the default of other corporations over whose lines the property was or should have been carried ; and where a carrier is in the habit of receiving and forwarding goods directed to any particular place, an agreement on his part to take them there, has been, presumed : but where their operations are entirely disconnected there is no partnership. (6 Hill, 158.) But in many cases in which different railroad corporations cannot be considered by the public strictly as partners, they may, and often doT act as agents of each other. And in this case, the Buffalo and New-York City Railroad, if the defendants can not be held liable for the negligence of the former, may be considered the agents of the defendants to receive property to be transported by them to New-York; and the defendants, in fact, received the property. The referee finds the two companies ran .in connection; and if the delivery to one was not a delivery to both for all purposes, I am inclined to think, such was the mode of transacting business by both companies, that the public might, within the decisions, well consider the Buffalo and New-York City Company the agent of the defendants so far that the latter would be liable for any breach by themselves of a contract to transport property to New-York, made by the Buffalo and New-York City Company. The butter in this case, was delivered to the latter company on the l'7th of January ; it could have been carried to New-York in three days ; and the usual time of transportation was six days; but it did not arrive there until the fourteenth, and was not delivered until the fifteenth day. The defendants actually received it on the second day after it was delivered by the *257 owners, it having been taken nearly one fourth of the whole distance in nine hours. The referee reports that, during the winter season, three-fourths of the freight carried by the' defendants goes to New-York; that during that month, January, a larger amount than usual had been received and had accumulated on the road, which was well equipped; but that the amount of freight received and accumulated was beyond the capacity of the road. These facts are relied upon as an excuse; but can the defendants, after receiving the property and after it had been carried nearly one-fourth of the distance, and without any warning to the consignor or consignee, be allowed nearly five times as long as was necessary to convey the property, and nearly triple the usual time, and make no compensation, and merely because they liad not sufficient means of conveyance ? Is this not a violation of an implied contract ? It does not appear that the accumulation of business was sudden or unexpected. The road was well equipped, but it was not shown that its capacity could not, with reasonable exertion, and ought not to have been made sufficient. But even if it could not, it is not pretended that the plaintiffs had the slightest notice that delays might. occur; on the contrary, them agent was informed by the person who appeared to have charge of the freight train and assisted to load the butter, that it would be delivered in New-York in about five days. If the referee believed this evidence, within the principle of some of the cases, he might have found there was a special contract. (Pickford v. Grand Junction R. Co., 12 M. & W., 766; Scothorn v. S. Staffordshire R. Co., 8 Exch. R., 341.) But I think it is sufficient that the defendants received the property without notice to the owner that there was any ground for apprehension that a longer period than was usual would be required for transportation. That information, at least, .they were bound to impart, that the consignor or consignee, as the case may be, might govern himself accordingly, and they were not justified in accepting the property, even *258 in silence, much less on a misrepresentation, when they knew that the plaintiffs must he disappointed. The judgment should be reversed and a new trial ordered.
I examined the question of damages, but the view taken by the majority of my brethren disposes of this cause without reference to that .point.
Gardiner, Ch. J., was also in favor of reversing the judgment. Ruggles, J., took no part in the decision.
Judgment affirmed.